UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 15-23384-CIV-MORENO

In re:

CARIBBEAN FUELS AMERICA, INC.,

    Debtor,

JONATHAN MCHENRY,

    Appellant,

vs.

DREW M. DILLWORTH as Chapter 7
Trustee,

    Appellee.
_____/

## ORDER AFFIRMING FINAL JUDGMENT OF THE BANKRUPTCY COURT

This bankruptcy appeal stems from payments made by a debtor under a written lease agreement and the purported value that the debtor received in return. The Bankruptcy Code allows bankruptcy trustees to avoid and recover payments made by the debtor in the two years prior to the filing of the bankruptcy petition if the debtor was insolvent at the time of the payments and if the debtor did not receive reasonably equivalent value in return for those payments. *See* 11 U.S.C. § 548. The primary issue on appeal is whether the Debtor, Caribbean Fuels American, Inc. ("C-Fuels"), received reasonably equivalent value for the payments made under a lease agreement with the Appellant, Jonathan McHenry. After a trial on the issue, the bankruptcy court concluded that C-Fuels did not receive reasonably equivalent value for the $74,375 it paid McHenry under the lease agreement. This Court agrees and affirms the final judgment for $74,375 in favor of Appellee Drew Dillworth, the bankruptcy trustee.

I.  **BACKGROUND**

Appellant Jonathan McHenry is the owner of real property located at 8600 Southwest 54th Avenue in Miami. On July 11, 2010, McHenry agreed to lease the property to Denis and Stephanie Beauvarlet (the "Beauvarlets") and C-Fuels. The lease agreement identified McHenry as the landlord and the Beauvarlets and C-Fuels collectively as the tenant. At the time that the parties entered into the lease agreement, Mr. Beauvarlet was the owner of C-Fuels, a fuel brokerage company. Mr. Beauvarlet intended to use the property as his home, as a location for entertaining high-end guests of C-Fuels, and as his wife's home office, where she worked for C-Fuels. The lease agreement, however, limited the use of the home to the Beauvarlets and their children for residential purposes only.

The lease commenced on August 1, 2010. The lease required a $17,000 deposit for the first month, followed by monthly payments of $8,500. C-Fuels paid the initial $17,000 deposit and the next two $8,500 payments in full. Thereafter, the Beauvarlets split the monthly rent with C-Fuels, with the Beauvarlets paying 75 percent and C-Fuels paying 25 percent. To accomplish this, the Beauvarlets transferred their 75 percent portion of the rent into one of C-Fuels' accounts, and then made the full $8,500 payment to McHenry from the C-Fuels' account via wire transfer. Accordingly, C-Fuels paid the initial $17,000 security deposit, the next two $8,500 monthly payments, and 25 percent of all remaining payments.

The initial lease ended on July 31, 2011. Although there was no written lease extension, McHenry allowed the Beauvarlets and C-Fuels to extend the lease through the end of May 2012. The Beauvarlets and C-Fuels paid McHenry $8,500 each month. The last rent payment to McHenry was made on May 4, 2012.

On July 9, 2012, C-Fuels filed a Chapter 7 bankruptcy petition and Appellee Drew Dillworth was appointed as the trustee. Nearly two years later, on June 4, 2014, Dillworth commenced this adversary proceeding to recover the $195,500 in rental payments that C-Fuels made to McHenry. Dillworth alleged, among other things, that C-Fuels was insolvent when it made the rental payments to McHenry and that C-Fuels did not receive reasonably equivalent value for those payments. Dillworth sought to avoid those transfers pursuant to 11 U.S.C. § 548 and to recover those transfers from McHenry pursuant to 11 U.S.C. § 550. McHenry was not served until with the complaint until after the two-year anniversary of the bankruptcy petition.

After trial and the submission of written closing statements, the Honorable Robert A. Mark issued findings of fact and conclusions of law on August 20, 2015. The court found that the all twenty-two transfers were made within two years of C-Fuels' Chapter 7 bankruptcy filing and that C-Fuels was insolvent at all times material to the action. The court also found that nineteen of the twenty-two payments made to McHenry were preceded by a transfer from the Beauvarlets to C-Fuels in an amount equivalent to 75 percent of the monthly lease obligation. The court determined, therefore, that 75 percent of those nineteen payments were "earmarked" for the purpose of paying rent and were not transfers of C-Fuels' property. Accordingly, the court concluded that those "earmarked" funds—equal to $121,125—were not avoidable.

As for the first three transfers, totaling $34,000, and the remaining 25 percent of the monthly payments made by C-Fuels, the court found that C-Fuels did not receive a quantifiable or concrete benefit for those payments. The court concluded that C-Fuels "paid money for a portion of the Beauvarlets' home, and did not receive reasonably equivalent value in exchange." Accordingly, the court found that the remaining $74,375 was avoidable, and issued a final judgment in Dillworth's favor for that amount.

## II. STANDARD OF REVIEW

The Court reviews a bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. *In re McLean*, 794 F.3d 1313, 1318 (11th Cir. 2015) (citing *Christopher v. Cox*, 493 F.3d 1336, 1340 n.9 (11th Cir. 2007)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

## III. ANALYSIS

The primary issue on appeal is whether the bankruptcy court clearly erred in finding that C-Fuels did not receive reasonably equivalent value in exchange for the rent payments it transferred to McHenry for the lease of his residential property. Under 11 U.S.C. § 548, a trustee may avoid any transfer of property that was made "on or within 2 years before the date of the filing of the [bankruptcy] petition" if the debtor (a) "[r]eceived less than a reasonably equivalent value in exchange for such transfer" and (b) "was insolvent on the date that such transfer was made." "The purpose of voiding transfers unsupported by 'reasonably equivalent value' is to protect creditors against the depletion of a bankrupt's estate." *In re Rodriguez*, 895 F.2d 725, 727 (11th Cir. 1990). McHenry does not challenge the Bankruptcy Court's finding that C-Fuels was insolvent when the at-issue transfers were made; McHenry only challenges the finding that C-Fuels did not receive reasonably equivalent value.

The determination of whether reasonably equivalent value was given is "largely a question of fact, as to which considerable latitude must be allowed to the trier of the facts." *Nordberg v. Arab Banking Corp.*, 904 F.2d 588, 593 (11th Cir. 1990) (citing *Mayo v. Pioneer Bank & Trust Co.*, 270 F.2d 823, 829–30 (5th Cir. 1959)) (internal quotations omitted). Under

this "totality of the circumstances" approach, courts generally consider three factors: (1) the "good faith of the parties," (2) the "disparity between the fair value of the property and what the debtor actually received," and (3) "whether the transaction was at arm's length." *See In re TOUSA, Inc.*, 444 B.R. 613, 662 (S.D. Fla. 2011) ("The totality of the circumstances test is not strictly a mathematical formula."); *In re Leneve*, 341 B.R. 53, 57–58 (Bankr. S.D. Fla. 2006). The essential examination for determining equivalency in value "is a comparison of 'what went out' with 'what was received.'" *Id.* (internal citations omitted). The trustee has the burden of establishing by a preponderance of the evidence that the debtor failed to receive "reasonably equivalent value" in exchange for funds conveyed. *See In re PSN USA, Inc.*, 615 F. App'x 925, 928 (11th Cir. 2015).

Given these principles, the Court cannot find that the bankruptcy court clearly erred in finding that C-Fuels did not receive equivalent value for the $74,345 it paid to McHenry. For starters, there is substantial record evidence that C-Fuels received no direct benefit from the rented property. The subject property is residential in nature—it is a 6,500 square foot house with six bedrooms and five bathrooms. The Beauvarlets and their three children resided in the property at all times during the rental period. The lease agreement itself limited to the Beauvarlets' use of the property exclusively for residential purposes. *See* D.E. 20-1 at 250 ("USE OF PREMISES: The Premises shall be occupied only by the Tenant and Tenant's immediate family consisting of two (2) adults and three (3) children, and guests of tenant *for residential purposes only*."). And C-Fuels had a separate commercial location in Coral Gables, Florida—for which it paid $3,500 per month—at all times during the lease agreement.

McHenry argues, however, that the evidence demonstrates that C-Fuels derived substantial indirect benefit from the rented property. Mr. Beauvarlet, for example, testified that

5

he chose to lease McHenry's home in part because it had space for a home office, which allowed him to service C-Fuels' clients after-hours. He also testified that McHenry's home came with all the necessary bells and whistles for entertaining C-Fuels' high-end customers. There is also evidence that the Beauvarlets' intended for Mrs. Beauvarlet to do some work for C-Fuels out of the rented property. But this evidence, even if accepted as true, does not mean that the bankruptcy court clearly erred in finding for Dillworth. C-Fuels paid about *38 percent* of all the money that McHenry received during the life of the lease, but there is little concrete testimony showing what value C-Fuels received in return for that money. At best, the Beauvarlets occasionally entertained C-Fuels' clients at their home and had a desk, a computer, and a phone in a room that they occasionally used for business purposes. This is especially true given that C-Fuels had a separate commercial location and the Beauvarlets owned and operated businesses other than C-Fuels throughout this period. Under these circumstances, the Court simply cannot conclude that the bankruptcy court clearly erred in finding that C-Fuels did not receive equivalent value for the $74,345.00 it paid to McHenry.

McHenry also argues on appeal that Mr. Beauvarlet was a necessary and indispensable party whose joinder to this proceeding was required pursuant to Rule 19 of the Federal Rules of Civil Procedure. McHenry did raise the affirmative defense that Mr. Beauvarlet was "a necessary party defendant to these proceedings," but he never filed a motion requiring the bankruptcy court to determine whether Mr. Beauvarlet was either necessary or indispensable. Instead, McHenry makes this argument for the first time on appeal, and arguments raised for the first time on appeal are generally waived. *See In re Freedman*, 427 F. App'x 813, 818 (11th Cir. 2011).

## IV.     **CONCLUSION**

For the foregoing reasons, it is hereby

**ADJUDGED** that the bankruptcy court's Final Judgment is **AFFIRMED** and that this case is **CLOSED**.

DONE AND ORDERED in Chambers at Miami, Florida, this __16th__ of August 2016.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record